```
          UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY
_____
THE ESTATE OF JOEY MYERS AND
CAROLYN K. CHAUDRY, AS
ADMINISTRATOR AD PROSEQUENDUM
OF THE ESTATE OF JOEY MYERS,
AND IN HER OWN RIGHT,

          Plaintiff,
                                    CIVIL ACTION
          vs.                       NO. 17-1411

CITY OF MILLVLLE; CHIEF JODY FARABELLA,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; OFFICER MICHAEL CALCHI,
OFFICER GAVIN PHILLIPS, OFFICER
JEFFREY PROFITT AND JOHN DOE POLICE
OFFICERS 1-10, INDIVIDUALLY AND
IN THEIR OFFICIAL CAPACITIES,

          Defendants.                  MOTION
_____
                              UNITED STATES COURTHOUSE
                              ONE JOHN F. GERRY PLAZA
                              4TH AND COOPER STREETS
                              CAMDEN, NEW JERSEY 08101
                              MARCH 6, 2018
```

**B E F O R E:**     **THE HONORABLE JOSEPH H. RODRIGUEZ**
                     **UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

LAW OFFICES OF CONRAD J. BENEDETTO
    BY:  CONRAD J. BENEDETTO, ESQUIRE
         CHARLES IZZO, ESQUIRE
            *Counsel for Plaintiff*

BARKER, GELFAND, JAMES AND SARVAS
    BY:  TODD J. GELFAND, ESQUIRE
            *Counsel for Defendants*


   Certified as true and correct as required by Title 28,
U.S.C., Section 753.

                        /S/ Karen Friedlander, CRR, RMR

*United States District Court*
*Camden, New Jersey*

*1*     THE DEPUTY CLERK:  All rise.

*2*     (OPEN COURT, March 6, 2018, 11:01 a.m.)

*3*     THE COURT:  You may be seated.  Good morning.

*4*     MR. BENEDETTO:  Good morning, Your Honor.

*5*     THE COURT:  Counsel, we're on the record in the
*6* matter of the Estate of Joey Myers against Chief Jody
*7* Farabella and others under our Civil No. 17-1411 for the
*8* purpose of hearing a motion to dismiss under our docket entry
*9* No. 12.  May we have the appearances for the record.

*10*    MR. IZZO:  Yes, Your Honor, for the plaintiff side,
*11* Charles Izzo, attorney appearing with Mr. Benedetto, attorney
*12* of record who is with me at counsel table.

*13*    MR. BENEDETTO:  Good morning, Your Honor.

*14*    THE COURT:  Good morning.

*15*    MR. GELFAND:  Good morning, Your Honor.  For the
*16* defendants, Todd Gelfand from the law firm of Barker, Gelfand
*17* James & Sarvas.

*18*    THE COURT:  Well, counsel, this is the motion to
*19* dismiss.  We will hear you.

*20*    MR. GELFAND:  Thank you, Your Honor.  I have between
*21* little and nothing to add to the papers.  This is certainly
*22* not a typical case and there's some retrospection before we
*23* file a motion like this.  Of course, the Court should be and
*24* would expect it to be loathe to dismiss a case at this early
*25* stage without the plaintiff having somewhat of an opportunity

1  to have a day in court.  But we think between proceedings for
2  a motion to dismiss on pleadings, together with the summary
3  judgement process and Rule 11 requiring that pleadings should
4  have to have some basis of evidentiary support in order to
5  have factual allegations in the pleadings, when we come to a
6  case like this where there's just no conceivable way to prove
7  the version of events that's in the plaintiff's Complaint
8  because by the plaintiff's admission there's no living witness
9  who's going to substantiate plaintiff's version of events in
10 the Complaint, then there should be this mechanism between the
11 three rules, particularly Rule 11, the rules for motions to
12 dismiss on the pleadings and summary judgement, to take a look
13 at this case at the early stage and just say, hey, wait a
14 minute, what evidence or testimony is ever going to be
15 produced that could possibly prove this claim.
16       Here we have an arrest in which force was used and the
17 only witnesses to the circumstances of the force that was used
18 are the police officers and the plaintiff, who is deceased,
19 that is, the deceased party.  There is nobody else who is
20 present to witness any of the events.  Certainly, the police
21 officers' version of events from the police reports don't
22 suggest any excessive force, battery or other claim, any
23 wrongdoing on the part of the police officers, and there's no
24 one alive who can testify to the contrary.  So that's the
25 basic basis of our motion.

*1*      THE COURT: But do you think they would have an
*2* opportunity to attempt to establish a claim because of the way
*3* the dog was handled?
*4*      MR. GELFAND: Judge, I have a lot of trouble with
*5* that. I saw that suggestion, that this was a dog that's so
*6* out of control that any bite by this dog would ipso facto be
*7* excessive force. I didn't see any case law support for the
*8* suggestion that that is a way to prove an excessive force
*9* claim. I couldn't find and I looked for any reported cases
*10* that say that -- where you can prove a dog's history
*11* demonstrates that dog is so vicious that automatically any use
*12* of the dog is automatically excessive force. That mode of
*13* proof can support an excessive force claim under 1983 or a
*14* battery claim.
*15*      I don't think there is any such case law. Plaintiff's
*16* counsel didn't cite any and I don't think there is any such
*17* case law. The general construct of an excessive force claim
*18* under 1983, is inconsistent -- for example, even if an officer
*19* has committed acts of excessive force in the past and then we
*20* have a new excessive force case on a new arrest, we can't
*21* prove nobody's ever been -- the law doesn't allow for a
*22* plaintiff to prove the claim of excessive force strictly based
*23* upon the officer's history of having used excessive force.
*24*      The first question in the excessive force claim is
*25* always, for starters, in the underlying arrest, the actual

1  interaction that's at issue in the Complaint; was excessive
2  force used.  And that's based upon what happened, who hit who
3  and when during the course of the arrest, not based on the
4  officer's history.  Even if we had an officer, in theory, who
5  has used excessive force every time he's comitted an arrest in
6  the past, that doesn't make the officer's next arrest
7  automatically excessive force.
8      It sounds like what plaintiff's counsel would like to
9  prove in that regard in terms of the dog is more of a Monell
10 claim, municipal liability.  If there was evidence that this
11 dog was so vicious it couldn't have been used, then perhaps
12 the municipality would be responsible for allowing the dog to
13 continue to be used.  But that Monell liability always depends
14 first and foremost on an underlying excessive force
15 constitutional violation by the officer and this arrest.
16     We don't even get into the history and what the
17 municipality knew or should have known about the dangerous
18 propensities of the dog.  We don't even get into all of that
19 until we have evidence and ultimately from which a jury could
20 find that excessive force was used in this arrest.  And no
21 matter how much discovery we do, there's not going to be any
22 evidence or testimony that can be produced from which the jury
23 could find that excessive force was used in this particular
24 arrest, even if this was a vicious dog who bites everybody
25 with or without cause.

1    In this case, based upon the facts from the only
2 witnesses we have who are alive, we know that the use of
3 force, the use of the canine force was justified in this case
4 because of the resisting arrest and because the subject didn't
5 come out from underneath the -- hidden under the stairs,
6 pursuant to the police commands.
7    So even if this was a dog who has used -- who has been
8 deployed and bit people that he shouldn't have bit in the
9 past, the use of the force in this particular arrest was still
10 justified according to the only living witnesses.
11        THE COURT:  But there are cases where the way the dog
12 was handled and the way the dog bit somebody can lead to an
13 excessive force claim.
14        MR. GELFAND:  True.  I guess the mode of employment
15 and force, different ways to describe that.
16        THE COURT:  So if -- what I assume the issue that the
17 plaintiff is attempting to raise is not whether the dog bit
18 somebody before, but under the circumstances of this specific
19 occurrence, whether the dog was properly handled, and I guess
20 one of the things that they're indicating as part of that
21 proof is the fact that it bit another police officer.
22    I think it centers around the specifics of the event
23 that occurred here, and not that the dog bit somebody else.
24    I think that's basically what they're attempting to
25 establish.

    *1*        MR. GELFAND:  Sure.  And I get --

    *2*        THE COURT:  And the history of the dog would only be

    *3* important if it then supports that it was mishandled on this

    *4* occasion also.

    *5*        MR. GELFAND:  I think to accept that as a method by

    *6* which plaintiff could prove a claim here in theory, then we

    *7* have to accept, A, a different version of events than we have

    *8* from the police reports with no witness who's going to testify

    *9* to a different version of events.  When we have from --

   *10*        THE COURT:  Won't the plaintiff at least have --

   *11* should have opportunity to confront the police officer

   *12* witnesses under oath?

   *13*        MR. GELFAND:  I mean, Judge, I don't think so, but if

   *14* Your Honor decides, then I understand and my motion will be

   *15* denied.  It's akin to saying that we can -- all of the

   *16* evidence we have is that there was nothing wrong.  But if we

   *17* can cross-examine the officers, maybe we can get them to

   *18* change their story, because we do have a documented story from

   *19* the officers in the reports that it's actually the officer's

   *20* fault for climbing in the window, the officer who got bit by

   *21* the dog.

   *22*      First of all, those were separable.  It's not like the

   *23* dog was in the midst of apprehending the suspect when he

   *24* turned and accidently bit the officer and the dog was that out

   *25* of control.

```
 1        It was:  The dog officer went into the pizzeria to find
 2   the suspect.  Another officer climbed in the window when the
 3   dog was looking for anybody else in the place, started to get
 4   bit and they shoved him back out the window, then the dog
 5   found the suspect he was looking for.
 6        The fault is not on an out-of-control dog and the
 7   police don't support that theory.  The fault is on the part of
 8   the officer who climbed in the window while we had the dog; a
 9   miscommunication between the officers.
10        But that -- I don't see how that leads to the cause of
11   action that the plaintiff has -- the miscommunication amongst
12   the officers that led to the officer being bit by the dog,
13   doesn't seem, at least to me, to logically flow to plaintiff
14   having a cause of action that this dog was so out of control
15   that any of use of the dog was an excessive force violation.
16        THE COURT:  Well, let's hear from the plaintiff.
17        MR. IZZO:  Sure, and thank you.  Your Honor,
18   initially, a great deal of discussion about the dog, and that
19   is the center of the case, but the plaintiff also had injuries
20   to his head and his ear.  I don't believe that was suggested
21   those were caused by the dog.  They're separate.
22        But, Your Honor, the crux of the matter, as the Court
23   said, is the ability to confront these individuals, police
24   officers who submitted these reports.  Your Honor, in the
25   response, we described the reports as self-serving, Your
```

1  Honor.  It sounds unkind, but it's accurate.  The reports are
2  prepared to serve the interest of the police department for
3  their internal supervision and also to make a report to the
4  public that is intended to justify their actions in each and
5  every case.
6        Your Honor, we don't know how complete the reports are,
7  we don't know how true they are, and as Your Honor knows,
8  there's been no discovery in this case.  The police reports
9  are coming forward courtesy of the moving party, and again,
10 the plaintiff's attorney needs to have an opportunity to
11 depose the officers under oath and flesh out the report that
12 they made to the police department, see if it's credible, see
13 if it's complete and inquire about the circumstances whereupon
14 the report was prepared, whether they had help, whether they
15 were given guidance as to what the report might want to say.
16       So, Your Honor, we're here before discovery.  The city
17 and the officers' attorney appears to concede that the
18 Complaint itself is proper, describes five different causes of
19 action, it recites facts which would support those causes and
20 they want the Court to dismiss it, nevertheless, based on the
21 police reports that they've provided to Your Honor.
22       We think that that's way short of what the Court would
23 need to reach any kind of determination like that, and the
24 conclusions about the behavior of the dog, we just can't do
25 it, Your Honor, without having the testimony of the officers.

 1          We -- you know, the attorney could suggest the
 2   different circumstances where the dog could never be liable,
 3   but as the Court said, there must be other circumstances, Your
 4   Honor.  It's a very violent type of an attack to be attacked
 5   by a police dog, and I would guess the professional standards
 6   are very strict, very tight and we just need to interview
 7   these officers under oath to see what their instructions were
 8   and whether they were followed.
 9          Your Honor, regardless of the ultimate facts of the
10   case, today's motion is irregular, it's not a summary
11   judgement motion, there's no basis for a 12(b)(6) motion to
12   dismiss.  We just ask the Court to allow the plaintiff to
13   develop its case, present it to the Court and stand on its
14   proofs.
15          MR. GELFAND:  I would just add, Judge, me and my
16   firm, we have any number of excessive force cases in this
17   courthouse at any given time, and in 90 percent of them, we
18   have at least the plaintiff's version of events that gives
19   some evidentiary support, even if it's ultimately not
20   believed, for the fact that the police officer or officers
21   used excessive force.  We even have cases where the plaintiff,
22   in essence, is deceased, brought by the plaintiff's estate.
23          In the 90 percent of those cases we have left, there's
24   witnesses, somebody who can provide some shred of evidentiary
25   support to a version of events that has the police committing

*1* an act of excessive force.  Here we don't have anybody who can
*2* provide that one shred of evidence to support that version of
*3* the story, only the hope that if we cross-examine the
*4* officers, we can get them off of the story -- off of that
*5* story.
*6*         I don't have and have not seen another case in this
*7* courthouse or anywhere where an excessive force claim was able
*8* to proceed without that one shred of evidentiary support to a
*9* version of events that has the police using excessive force,
*10* and that's why we filed the motion.
*11*         THE COURT:  I could understand that.  My concern is
*12* that the person, the plaintiff here, or the plaintiff, you
*13* know, unfortunately met with an accident and died, so that the
*14* one person that could establish the claim, I guess unrelated
*15* to the underlying cause of action, is no longer surviving.
*16*         On a motion to dismiss, when the plaintiff in the case
*17* now is limited without a live witness, I think they should at
*18* least be entitled to some limited discovery to see if, in
*19* fact, they can satisfy themselves with a cause of action that
*20* might confront a motion for summary judgement as opposed to a
*21* motion to dismiss.
*22*         I hesitate dismissing a case when the plaintiff is
*23* attempting to allege a legitimate cause of action, they've
*24* pled what would appear to be a legitimate cause of action and
*25* dismissed them without the opportunity of some discovery.

*1*     I think under the circumstances that I'm going to
*2* dismiss the motion to dismiss without prejudice -- but dismiss
*3* it and allow some limited discovery to see if it can structure
*4* a motion for summary judgement as opposed to a motion to
*5* dismiss.  A motion to dismiss without discovery isn't normally
*6* favored, so I think for my personal concern, I think there
*7* should be some limited discovery.
*8*     Now, we say that past events should not influence what
*9* you do today, but it's not unusual over 30 years of my sitting
*10* as a judge to indicate that I have not seen misstatements from
*11* the bench on the witness stand when somebody is under oath.
*12* So I think at least there should be that opportunity for the
*13* plaintiff to explore the legitimacy of his claim and then we
*14* can take the next step in the form of a motion for summary
*15* judgement.
*16*     Clearly, I hesitate dismissing the case without at
*17* least some limited discovery.
*18*     So that we will simply say that the motion to dismiss
*19* is dismissed and counsel given an opportunity for discovery.
*20*     Now, I don't know who the magistrate in this case is.
*21*        MR. IZZO:  I believe it's Judge Donio, Your Honor.
*22*        THE COURT:  It is Judge Donio.  Have you been before
*23* her at all for the purpose of discovery?
*24*        MR. BENEDETTO:  Yes.
*25*        MR. GELFAND:  Not in this case.

1    THE COURT:  All right.
2    MR. BENEDETTO:  No.
3    THE COURT:  I'll be having lunch with her today.
4  It's the Judges' Tuesday lunch and I'm going to indicate to
5  her that I'll allow some limited discovery and see how she
6  might want to structure that and whether if I say that 30
7  days, 60 days, whatever, I would include that in an order.  I
8  don't know how much time you would need, but let's see what
9  she recommends as far as putting it on the track for
10 discovery.
11     Well, I appreciate your presence here, and I didn't
12 want to waste anybody's time, but I do think that the
13 plaintiff at least should have an opportunity to see whether,
14 in fact, they can establish a claim that can survive summary
15 judgement.
16    MR. GELFAND:  Thank you, Your Honor.
17    MR. BENEDETTO:  Thank you, Your Honor.
18    THE COURT:  Thank you.
19    (11:20 a.m.)
20
21
22
23
24
25

/

**/S** [1] - 1:25

0

**08101** [1] - 1:14

1

**1-10** [1] - 1:10
**11** [2] - 3:3, 3:11
**11:01** [1] - 2:2
**11:20** [1] - 13:19
**12** [1] - 2:9
**12(b)(6** [1] - 10:11
**17-1411** [2] - 1:6, 2:7
**1983** [2] - 4:13, 4:18

2

**2018** [2] - 1:14, 2:2
**28** [1] - 1:23

3

**30** [2] - 12:9, 13:6

4

**4TH** [1] - 1:13

6

**6** [2] - 1:14, 2:2
**60** [1] - 13:7

7

**753** [1] - 1:24

9

**90** [2] - 10:17, 10:23

A

**a.m** [2] - 2:2, 13:19
**ability** [1] - 8:23
**able** [1] - 11:7
**accept** [2] - 7:5, 7:7
**accident** [1] - 11:13
**accidently** [1] - 7:24
**according** [1] - 6:10
**accurate** [1] - 9:1
**act** [1] - 11:1
**ACTION** [1] - 1:6
**action** [7] - 8:11, 8:14, 9:19, 11:15, 11:19, 11:23, 11:24
**actions** [1] - 9:4
**acts** [1] - 4:19
**actual** [1] - 4:25
**AD** [1] - 1:3
**add** [2] - 2:21, 10:15
**ADMINISTRATOR** [1] - 1:3
**admission** [1] - 3:8
**akin** [1] - 7:15
**alive** [2] - 3:24, 6:2
**allegations** [1] - 3:5
**allege** [1] - 11:23
**allow** [4] - 4:21, 10:12, 12:3, 13:5
**allowing** [1] - 5:12
**AND** [7] - 1:2, 1:4, 1:8, 1:9, 1:10, 1:13, 1:20
**appear** [1] - 11:24
**appearances** [1] - 2:9
**appearing** [1] - 2:11
**appreciate** [1] - 13:11
**apprehending** [1] - 7:23
**arrest** [11] - 3:16, 4:20, 4:25, 5:3, 5:5, 5:6, 5:15, 5:20, 5:24, 6:4, 6:9
**AS** [1] - 1:3
**assume** [1] - 6:16
**attack** [1] - 10:4
**attacked** [1] - 10:4
**attempt** [1] - 4:2
**attempting** [3] - 6:17, 6:24, 11:23
**attorney** [5] - 2:11, 9:10, 9:17, 10:1
**automatically** [3] - 4:11, 4:12, 5:7

B

**BARKER** [1] - 1:20
**Barker** [1] - 2:16
**based** [5] - 4:22, 5:2, 5:3, 6:1, 9:20
**basic** [1] - 3:25
**basis** [3] - 3:4, 3:25, 10:11
**battery** [2] - 3:22, 4:14
**behavior** [1] - 9:24
**bench** [1] - 12:11
**BENEDETTO** [7] - 1:18, 1:18, 2:4, 2:13, 12:24, 13:2, 13:17
**Benedetto** [1] - 2:11
**between** [4] - 2:20, 3:1, 3:10, 8:9
**bit** [10] - 6:8, 6:12, 6:17, 6:21, 6:23, 7:20, 7:24, 8:4, 8:12
**bite** [1] - 4:6
**bites** [1] - 5:24
**brought** [1] - 10:22
**BY** [2] - 1:18, 1:21

C

**CALCHI** [1] - 1:8
**CAMDEN** [1] - 1:14
**canine** [1] - 6:3
**CAPACITIES** [1] - 1:10
**CAPACITY** [1] - 1:8
**CAROLYN** [1] - 1:3
**case** [21] - 2:22, 2:24, 3:6, 3:13, 4:7, 4:15, 4:17, 4:20, 6:1, 6:3, 8:19, 9:5, 9:8, 10:10, 10:13, 11:6, 11:16, 11:22, 12:16, 12:20, 12:25
**cases** [5] - 4:9, 6:11, 10:16, 10:21, 10:23
**caused** [1] - 8:21
**causes** [2] - 9:18, 9:19
**center** [1] - 8:19
**centers** [1] - 6:22
**certainly** [2] - 2:21, 3:20
**Certified** [1] - 1:23
**change** [1] - 7:18
**Charles** [1] - 2:11
**CHARLES** [1] - 1:19
**CHAUDRY** [1] - 1:3
**Chief** [1] - 2:6
**CHIEF** [1] - 1:7
**circumstances** [6] - 3:17, 6:18, 9:13, 10:2, 10:3, 12:1
**cite** [1] - 4:16
**CITY** [1] - 1:7
**city** [1] - 9:16
**Civil** [1] - 2:7
**CIVIL** [1] - 1:6
**claim** [16] - 3:15, 3:22, 4:2, 4:9, 4:13, 4:14, 4:17, 4:22, 4:24, 5:10, 6:13, 7:6, 11:7, 11:14, 12:13, 13:14
**clearly** [1] - 12:16
**CLERK** [1] - 2:1
**climbed** [2] - 8:2, 8:8
**climbing** [1] - 7:20
**coming** [1] - 9:9
**comitted** [1] - 5:5
**commands** [1] - 6:6
**committed** [1] - 4:19
**committing** [1] - 10:25
**Complaint** [4] - 3:7, 3:10, 5:1, 9:18
**complete** [2] - 9:6, 9:13
**concede** [1] - 9:17
**conceivable** [1] - 3:6
**concern** [2] - 11:11, 12:6
**conclusions** [1] - 9:24
**confront** [3] - 7:11, 8:23, 11:20
**CONRAD** [2] - 1:18, 1:18
**constitutional** [1] - 5:15
**construct** [1] - 4:17
**continue** [1] - 5:13
**contrary** [1] - 3:24
**control** [4] - 4:6, 7:25, 8:6, 8:14
**COOPER** [1] - 1:13
**correct** [1] - 1:23
**Counsel** [2] - 1:19, 1:21
**counsel** [6] - 2:5, 2:12, 2:18, 4:16, 5:8, 12:19
**course** [2] - 2:23, 5:3
**COURT** [17] - 1:1, 2:2, 2:3, 2:5, 2:14, 2:18, 4:1, 6:11, 6:16, 7:2, 7:10, 8:16, 11:11, 12:22, 13:1, 13:3, 13:18
**Court** [7] - 2:23, 8:22, 9:20, 9:22, 10:3, 10:12, 10:13
**court** [1] - 3:1
**courtesy** [1] - 9:9
**courthouse** [2] - 10:17, 11:7
**COURTHOUSE** [1] - 1:12
**credible** [1] - 9:12
**cross** [2] - 7:17, 11:3
**cross-examine** [2] - 7:17, 11:3
**CRR** [1] - 1:25
**crux** [1] - 8:22

D

**dangerous** [1] - 5:17
**days** [2] - 13:7
**deal** [1] - 8:18
**deceased** [3] - 3:18, 3:19, 10:22
**decides** [1] - 7:14
**Defendants** [2] - 1:11, 1:21
**defendants** [1] - 2:16
**demonstrates** [1] - 4:11
**denied** [1] - 7:15
**department** [2] - 9:2, 9:12
**deployed** [1] - 6:8
**depose** [1] - 9:11
**DEPUTY** [1] - 2:1
**describe** [1] - 6:15
**described** [1] - 8:25
**describes** [1] - 9:18
**determination** [1] - 9:23
**develop** [1] - 10:13
**died** [1] - 11:13
**different** [5] - 6:15, 7:7, 7:9, 9:18, 10:2
**discovery** [13] - 5:21, 9:8, 9:16, 11:18, 11:25, 12:3, 12:5, 12:7, 12:17, 12:19, 12:23, 13:5, 13:10
**discussion** [1] - 8:18
**dismiss** [15] - 2:8, 2:19, 2:24, 3:2, 3:12, 9:20, 10:12, 11:16, 11:21, 12:2, 12:5, 12:18
**dismissed** [2] - 11:25, 12:19
**dismissing** [2] - 11:22, 12:16
**DISTRICT** [3] - 1:1, 1:1, 1:16
**docket** [1] - 2:8
**documented** [1] - 7:18
**DOE** [1] - 1:9
**dog** [33] - 4:3, 4:5, 4:6, 4:11, 4:12, 5:9, 5:11, 5:12, 5:18, 5:24, 6:7, 6:11, 6:12, 6:17, 6:19, 6:23, 7:2, 7:21, 7:23, 7:24, 8:1, 8:3, 8:4, 8:6, 8:8, 8:12, 8:14, 8:15, 8:18, 8:21, 9:24, 10:2, 10:5
**dog's** [1] - 4:10
**Donio** [2] - 12:21, 12:22
**during** [1] - 5:3

**E**

ear [1] - 8:20
early [2] - 2:24, 3:13
employment [1] - 6:14
entitled [1] - 11:18
entry [1] - 2:8
ESQUIRE [3] - 1:18, 1:19, 1:21
essence [1] - 10:22
establish [4] - 4:2, 6:25, 11:14, 13:14
ESTATE [2] - 1:2, 1:4
Estate [1] - 2:6
estate [1] - 10:22
event [1] - 6:22
events [10] - 3:7, 3:9, 3:20, 3:21, 7:7, 7:9, 10:18, 10:25, 11:9, 12:8
evidence [6] - 3:14, 5:10, 5:19, 5:22, 7:16, 11:2
evidentiary [4] - 3:4, 10:19, 10:24, 11:8
examine [2] - 7:17, 11:3
example [1] - 4:18
excessive [24] - 3:22, 4:7, 4:8, 4:12, 4:13, 4:17, 4:19, 4:20, 4:22, 4:23, 4:24, 5:1, 5:5, 5:7, 5:14, 5:20, 5:23, 6:13, 8:15, 10:16, 10:21, 11:1, 11:7, 11:9
expect [1] - 2:24
explore [1] - 12:13

**F**

fact [4] - 6:21, 10:20, 11:19, 13:14
facto [1] - 4:6
facts [3] - 6:1, 9:19, 10:9
factual [1] - 3:5
far [1] - 13:9
FARABELLA [1] - 1:7
Farabella [1] - 2:7
fault [3] - 7:20, 8:6, 8:7
favored [1] - 12:6
file [1] - 2:23
filed [1] - 11:10
firm [2] - 2:16, 10:16
first [3] - 4:24, 5:14, 7:22
five [1] - 9:18
flesh [1] - 9:11
flow [1] - 8:13
followed [1] - 10:8
FOR [1] - 1:1
force [30] - 3:16, 3:17, 3:22, 4:7, 4:8, 4:12, 4:13, 4:17, 4:19, 4:20, 4:22, 4:23, 4:24, 5:2, 5:5, 5:7, 5:14, 5:20, 5:23, 6:3, 6:9, 6:13, 6:15, 8:15, 10:16, 10:21, 11:1, 11:7, 11:9
foremost [1] - 5:14
form [1] - 12:14
forward [1] - 9:9
Friedlander [1] - 1:25

**G**

GAVIN [1] - 1:9
Gelfand [2] - 2:16
GELFAND [12] - 1:20, 1:21, 2:15, 2:20, 4:4, 6:14, 7:1, 7:5, 7:13, 10:15, 12:25, 13:16
general [1] - 4:17
GERRY [1] - 1:13
given [3] - 9:15, 10:17, 12:19
great [1] - 8:18
guess [4] - 6:14, 6:19, 10:5, 11:14
guidance [1] - 9:15

**H**

handled [3] - 4:3, 6:12, 6:19
head [1] - 8:20
hear [2] - 2:19, 8:16
hearing [1] - 2:8
help [1] - 9:14
HER [1] - 1:4
hesitate [2] - 11:22, 12:16
hidden [1] - 6:5
HIS [1] - 1:8
history [5] - 4:10, 4:23, 5:4, 5:16, 7:2
hit [1] - 5:2
Honor [20] - 2:4, 2:10, 2:13, 2:15, 2:20, 7:14, 8:17, 8:22, 8:24, 9:1, 9:6, 9:7, 9:16, 9:21, 9:25, 10:4, 10:9, 12:21, 13:16, 13:17
HONORABLE [1] - 1:15
hope [1] - 11:3

**I**

important [1] - 7:3
IN [3] - 1:4, 1:8, 1:10
include [1] - 13:7
inconsistent [1] - 4:18
indicate [2] - 12:10, 13:4
indicating [1] - 6:20
INDIVIDUALLY [2] - 1:8, 1:10
individuals [1] - 8:23
influence [1] - 12:8
injuries [1] - 8:19
inquire [1] - 9:13
instructions [1] - 10:7
intended [1] - 9:4
interaction [1] - 5:1
interest [1] - 9:2
internal [1] - 9:3
interview [1] - 10:6
ipso [1] - 4:6
irregular [1] - 10:10
issue [2] - 5:1, 6:16
itself [1] - 9:18
IZZO [4] - 1:19, 2:10, 8:17, 12:21
Izzo [1] - 2:11

**J**

JAMES [1] - 1:20
James [1] - 2:17
JEFFREY [1] - 1:9
JERSEY [2] - 1:1, 1:14
Jody [1] - 2:6
JODY [1] - 1:7
Joey [1] - 2:6
JOEY [2] - 1:2, 1:4
JOHN [2] - 1:9, 1:13
JOSEPH [1] - 1:15
judge [1] - 12:10
JUDGE [1] - 1:16
Judge [5] - 4:4, 7:13, 10:15, 12:21, 12:22
judgement [7] - 3:3, 3:12, 10:11, 11:20, 12:4, 12:15, 13:15
Judges' [1] - 13:4
jury [2] - 5:19, 5:22
justified [2] - 6:3, 6:10
justify [1] - 9:4

**K**

Karen [1] - 1:25
kind [1] - 9:23
known [1] - 5:17
knows [1] - 9:7

**L**

law [5] - 2:16, 4:7, 4:15, 4:17, 4:21
LAW [1] - 1:18
lead [1] - 6:12
leads [1] - 8:10
least [7] - 7:10, 8:13, 10:18, 11:18, 12:12, 12:17, 13:13
led [1] - 8:12
left [1] - 10:23
legitimacy [1] - 12:13
legitimate [2] - 11:23, 11:24
liability [2] - 5:10, 5:13
liable [1] - 10:2
limited [6] - 11:17, 11:18, 12:3, 12:7, 12:17, 13:5
live [1] - 11:17
living [2] - 3:8, 6:10
loathe [1] - 2:24
logically [1] - 8:13
look [1] - 3:12
looked [1] - 4:9
looking [2] - 8:3, 8:5
lunch [2] - 13:3, 13:4

**M**

magistrate [1] - 12:20
March [1] - 2:2
MARCH [1] - 1:14
matter [3] - 2:6, 5:21, 8:22
mean [1] - 7:13
mechanism [1] - 3:10
met [1] - 11:13
method [1] - 7:5
MICHAEL [1] - 1:8
midst [1] - 7:23
might [3] - 9:15, 11:20, 13:6
MILLVLLE [1] - 1:7
minute [1] - 3:14
miscommunication [2] - 8:9, 8:11
mishandled [1] - 7:3
misstatements [1] - 12:10
mode [2] - 4:12, 6:14
Monell [2] - 5:9, 5:13
morning [5] - 2:3, 2:4, 2:13, 2:14, 2:15
motion [19] - 2:8, 2:18, 2:23, 3:2, 3:25, 7:14, 10:10, 10:11, 11:10, 11:16, 11:20, 11:21, 12:2, 12:4, 12:5, 12:14, 12:18
motions [1] - 3:11
moving [1] - 9:9
MR [18] - 2:4, 2:10, 2:13, 2:15, 2:20, 4:4, 6:14, 7:1, 7:5, 7:13, 8:17, 10:15, 12:21, 12:24, 12:25, 13:2, 13:16, 13:17
municipal [1] - 5:10
municipality [2] - 5:12, 5:17
must [1] - 10:3
MYERS [2] - 1:2, 1:4
Myers [1] - 2:6

**N**

need [3] - 9:23, 10:6, 13:8
needs [1] - 9:10
never [1] - 10:2
nevertheless [1] - 9:20
NEW [2] - 1:1, 1:14
new [2] - 4:20
next [2] - 5:6, 12:14
NO [1] - 1:6
nobody [1] - 3:19
nobody's [1] - 4:21
normally [1] - 12:5
nothing [2] - 2:21, 7:16
number [1] - 10:16

**O**

oath [4] - 7:12, 9:11, 10:7, 12:11
occasion [1] - 7:4
occurred [1] - 6:23
occurrence [1] - 6:19
OF [6] - 1:1, 1:2, 1:4, 1:7, 1:18
officer [12] - 4:18, 5:4, 5:15, 6:21, 7:11, 7:20, 7:24, 8:1, 8:2, 8:8, 8:12, 10:20

OFFICER [3] - 1:8, 1:9
officer's [4] - 4:23, 5:4, 5:6, 7:19
OFFICERS [1] - 1:10
officers [12] - 3:18, 3:23, 7:17, 7:19, 8:9, 8:12, 8:24, 9:11, 9:25, 10:7, 10:20, 11:4
officers' [2] - 3:21, 9:17
OFFICES [1] - 1:18
OFFICIAL [2] - 1:8, 1:10
one [5] - 3:24, 6:20, 11:2, 11:8, 11:14
ONE [1] - 1:13
OPEN [1] - 2:2
opportunity [8] - 2:25, 4:2, 7:11, 9:10, 11:25, 12:12, 12:19, 13:13
opposed [2] - 11:20, 12:4
order [2] - 3:4, 13:7
out-of-control [1] - 8:6
OWN [1] - 1:4

**P**

papers [1] - 2:21
part [3] - 3:23, 6:20, 8:7
particular [2] - 5:23, 6:9
particularly [1] - 3:11
party [2] - 3:19, 9:9
past [4] - 4:19, 5:6, 6:9, 12:8
people [1] - 6:8
percent [2] - 10:17, 10:23
perhaps [1] - 5:11
person [2] - 11:12, 11:14
personal [1] - 12:6
PHILLIPS [1] - 1:9
pizzeria [1] - 8:1
place [1] - 8:3
plaintiff [19] - 2:10, 2:25, 3:18, 4:22, 6:17, 7:6, 7:10, 8:11, 8:13, 8:16, 8:19, 10:12, 10:21, 11:12, 11:16, 11:22, 12:13, 13:13
Plaintiff [2] - 1:5, 1:19
plaintiff's [7] - 3:7, 3:8, 3:9, 5:8, 9:10, 10:18, 10:22
Plaintiff's [1] - 4:15
PLAZA [1] - 1:13
pleadings [4] - 3:2, 3:3, 3:5, 3:12
pled [1] - 11:24
police [18] - 3:18, 3:20, 3:21, 3:23, 6:6, 6:21, 7:8, 7:11, 8:7, 8:23, 9:2, 9:8, 9:12, 9:21, 10:5, 10:20, 10:25, 11:9
POLICE [1] - 1:9
possibly [1] - 3:15
prejudice [1] - 12:2
prepared [2] - 9:2, 9:14
presence [1] - 13:11
present [2] - 3:20, 10:13
proceed [1] - 11:8
proceedings [1] - 3:1
process [1] - 3:3
produced [2] - 3:15, 5:22
professional [1] - 10:5
PROFITT [1] - 1:9
proof [2] - 4:13, 6:21
proofs [1] - 10:14
propensities [1] - 5:18
proper [1] - 9:18
properly [1] - 6:19
PROSEQUENDUM [1] - 1:3
prove [8] - 3:6, 3:15, 4:8, 4:10, 4:21, 4:22, 5:9, 7:6
provide [2] - 10:24, 11:2
provided [1] - 9:21
public [1] - 9:4
purpose [2] - 2:8, 12:23
pursuant [1] - 6:6
putting [1] - 13:9

**R**

raise [1] - 6:17
reach [1] - 9:23
recites [1] - 9:19
recommends [1] - 13:9
record [3] - 2:5, 2:9, 2:12
regard [1] - 5:9
regardless [1] - 10:9
report [4] - 9:3, 9:11, 9:14, 9:15
reported [1] - 4:9
reports [9] - 3:21, 7:8, 7:19, 8:24, 8:25, 9:1, 9:6, 9:8, 9:21
required [1] - 1:23
requiring [1] - 3:3
resisting [1] - 6:4
response [1] - 8:25
responsible [1] - 5:12
retrospection [1] - 2:22
RIGHT [1] - 1:4
rise [1] - 2:1
RMR [1] - 1:25
RODRIGUEZ [1] - 1:15
Rule [2] - 3:3, 3:11
rules [2] - 3:11

**S**

SARVAS [1] - 1:20
Sarvas [1] - 2:17
satisfy [1] - 11:19
saw [1] - 4:5
seated [1] - 2:3
Section [1] - 1:24
see [10] - 4:7, 8:10, 9:12, 10:7, 11:18, 12:3, 13:5, 13:8, 13:13
seem [1] - 8:13
self [1] - 8:25
self-serving [1] - 8:25
separable [1] - 7:22
separate [1] - 8:21
serve [1] - 9:2
serving [1] - 8:25
short [1] - 9:22
shoved [1] - 8:4
shred [3] - 10:24, 11:2, 11:8
side [1] - 2:10
simply [1] - 12:18
sitting [1] - 12:9
somewhat [1] - 2:25
sounds [2] - 5:8, 9:1
specific [1] - 6:18
specifics [1] - 6:22
stage [2] - 2:25, 3:13
stairs [1] - 6:5
stand [2] - 10:13, 12:11
standards [1] - 10:5
started [1] - 8:3
starters [1] - 4:25
STATES [3] - 1:1, 1:12, 1:16
step [1] - 12:14
still [1] - 6:9
story [5] - 7:18, 11:3, 11:4, 11:5
STREETS [1] - 1:13
strict [1] - 10:6
strictly [1] - 4:22
structure [2] - 12:3, 13:6
subject [1] - 6:4
submitted [1] - 8:24
substantiate [1] - 3:9
suggest [2] - 3:22, 10:1
suggested [1] - 8:20
suggestion [2] - 4:5, 4:8
summary [7] - 3:2, 3:12, 10:10, 11:20, 12:4, 12:14, 13:14
supervision [1] - 9:3
support [9] - 3:4, 4:7, 4:13, 8:7, 9:19, 10:19, 10:25, 11:2, 11:8
supports [1] - 7:3
survive [1] - 13:14
surviving [1] - 11:15
suspect [3] - 7:23, 8:2, 8:5

**T**

table [1] - 2:12
terms [1] - 5:9
testify [2] - 3:24, 7:8
testimony [3] - 3:14, 5:22, 9:25
THE [20] - 1:1, 1:2, 1:4, 1:15, 2:1, 2:3, 2:5, 2:14, 2:18, 4:1, 6:11, 6:16, 7:2, 7:10, 8:16, 11:11, 12:22, 13:1, 13:3, 13:18
THEIR [1] - 1:10
themselves [1] - 11:19
theory [3] - 5:4, 7:6, 8:7
they've [2] - 9:21, 11:23
three [1] - 3:11
tight [1] - 10:6
Title [1] - 1:23
today [2] - 12:9, 13:3
today's [1] - 10:10
TODD [1] - 1:21
Todd [1] - 2:16
together [1] - 3:2
track [1] - 13:9
trouble [1] - 4:4
true [3] - 1:23, 6:14, 9:7
Tuesday [1] - 13:4
turned [1] - 7:24
type [1] - 10:4
typical [1] - 2:22

**U**

U.S.C [1] - 1:24
ultimate [1] - 10:9
ultimately [2] - 5:19, 10:19
under [11] - 2:7, 2:8, 4:13, 4:18, 6:5, 6:18, 7:12, 9:11, 10:7, 12:1, 12:11
underlying [3] - 4:25, 5:14, 11:15
underneath [1] - 6:5
unfortunately [1] - 11:13
UNITED [3] - 1:1, 1:12, 1:16
unkind [1] - 9:1
unrelated [1] - 11:14
unusual [1] - 12:9

**V**

version [9] - 3:7, 3:9, 3:21, 7:7, 7:9, 10:18, 10:25, 11:2, 11:9
vicious [3] - 4:11, 5:11, 5:24
violation [2] - 5:15, 8:15
violent [1] - 10:4
vs [1] - 1:6

**W**

wait [1] - 3:13
waste [1] - 13:12
ways [1] - 6:15
window [4] - 7:20, 8:2, 8:4, 8:8
witness [5] - 3:8, 3:20, 7:8, 11:17, 12:11
witnesses [5] - 3:17, 6:2, 6:10, 7:12, 10:24
wrongdoing [1] - 3:23

**Y**

**years** [1] - 12:9